UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
NAHUM HORTON,

              Plaintiff,

              ORDER
-against-               12-CV-3545(SJF)(ARL)

NASSAU COUNTY CORRECTIONAL
FACILITY,

              Defendant.
------------------------------------------------------X
FEUERSTEIN, District Judge:

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y
★ OCT 10 2012 ★
LONG ISLAND OFFICE

I.    Introduction

On July 17, 2012, *pro se* plaintiff Nahum Horton ("plaintiff") filed a complaint pursuant to 42 U.S.C. § 1983 against the Nassau County Correctional Facility ("NCCC"), accompanied by an application to proceed *in forma pauperis*. Plaintiff subsequently also moved for the appointment of *pro bono* counsel.

Plaintiff's financial status, as set forth in the declaration in support of his application to proceed *in forma pauperis*, qualifies him to commence this action without prepayment of the filing fee. See 28 U.S.C. § 1915(a)(1). Accordingly, plaintiff's application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, plaintiff's complaint is *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and his motion for the appointment of counsel is denied as moot.

II.    The Complaint

Plaintiff alleges that on June 3, 2012, he fractured and/or dislocated his finger while he

1

was playing basketball in the "rec yard" at the NCCC, (Compl., ¶ IV), where he was incarcerated as a pretrial detainee awaiting trial in this Court under indictment number 12-cr-00161 (DRH)(ARL). According to plaintiff, an unidentified "rec officer" completed an incident report and sent him to the medical unit, but he was told by unidentified staff at the medical unit that they could not treat his injury and that he had to wait for a doctor to arrive at the jail in order to receive medical treatment. (Id.) Although plaintiff alleges that he had to wait three and a half (3 ½ ) days until he received medical treatment for his injury, he further alleges that on June 4, 2012, x-rays were taken and he was given Tylenol and Motrin for the pain. (Id.) According to plaintiff, on June 5, 2012, he was examined in the medical unit by a physician's assistant, whom he identifies as Ms. Divine, but she told him that she did not have his file, could "do nothing for [him] at that time" and could not send him to the hospital until she looked at his x-rays. (Id.) Plaintiff alleges that he did not receive any medical treatment until June 6, 2012, when another, unidentified physician's assistant examined him in the medical unit and "put [his] finger back in place and wrap [sic] it with [his] fingers folded down." (Id.) According to plaintiff, although his fingers were "wrapped and folded down" for almost three (3) weeks, and two (2) more x-rays were taken, the physician's assistant who treated him never "re-visit[ed]" him and noone appeared for his two (2)-week appointment to start his physical therapy. (Id.)

Plaintiff alleges: (1) that his "middle finger is now stuck and [he] cannot bend it back and forth," (Compl., ¶ IV), or "up or down, due to the malpractice of wrapping it up in a bent position," (Compl., ¶ IV.A); (2) that he "believe[s] [he] ha[s] nerve damage and/or ligament damage," (Id.); and (3) that his finger is still swollen and is now "numb at the tip." (Id.) According to plaintiff, he "need[s] an MRI to check for nerve and ligament damage * * * [and] to

2

see a specialist in order to get the proper professional medical treatment [he] need[s] so [he] [does not] lose use of [his] fingers in [his] hand." (Id.) Plaintiff seeks "financial compensation" in the amount of eight hundred thousand dollars ($800,000.00); to have defendant pay for his medical treatment "for as long as [his] injury continues to hinder [him] or cause [him] pain and discomfort and until it has been properly healed or corrected by surgery;" and "a sentence reduction, being that [he] [is] a federal inmate being held * * * at the [NCCC] * * *."[1] (Compl., at ¶ V).

III.  Discussion

A.  28 U.S.C. §§ 1915A and 1915(e)(2)

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

---

[1] Plaintiff is a pretrial detainee at the NCCC pursuant to an Order of Detention Pending Trial signed by the Honorable Arlene R. Lindsay, United States Magistrates Judge, on March 7, 2012 under indictment number 12-cr-00161. Since no sentence has yet been imposed, plaintiff cannot seek a reduction in sentence. In any event, the exclusive avenue to obtain injunctive relief challenging the duration of a federal inmate's sentence is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. See Nelson v. Campbell, 541 U.S. 637, 643, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004). Such relief cannot be sought in a civil rights action under Section 1983. See id. Accordingly, plaintiff's Section 1983 claim seeking a reduction in sentence is dismissed for failure to state a claim for relief. Such dismissal is without prejudice to seeking any available relief under 28 U.S.C. § 2255 after sentencing.

It is axiomatic that district courts are required to read *pro se* complaints liberally, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), and to construe them "to raise the strongest arguments [that they] suggest[]." Jabbar v. Fischer, 683 F.3d 54, 56 (2d Cir. 2012) (quotations, alterations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson, 551 U.S. 89, 127 S. Ct. at 2200 (quotations and citation omitted); see also Anderson News, LLC v. American Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012) (accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955); see also Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011) (accord). "Factual allegations must be enough to raise a right to relief above the speculative level, * * * on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-56, 127 S.Ct. at 1959; see also Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010), cert. denied,

131 S. Ct. 901, 178 L. Ed. 2d 803 (2011) (accord). The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Ashcroft, 556 U.S. at 678, 129 S.Ct. at 1949; see also Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011) (accord).

B. Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012); Ahlers v. Rabinowitz, 684 F.3d 53, 60-1 (2d Cir. 2012), cert. denied, 2012 WL 4006001 (2012).

1. NCCC

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." See Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); see also Robischung-Walsh v. Nassau County Police Department, 699 F. Supp.

5

2d 563, 565 (E.D.N.Y. 2010), aff'd, 421 Fed. Appx. 38 (2d Cir. Apr. 29, 2011). Since the NCCC is an administrative arm of the County of Nassau ("the County"), it lacks the capacity to be sued. See, e.g. Hawkins v. Nassau County Correctional Facility, 781 F. Supp. 2d 107, 109 n. 1 (E.D.N.Y. 2011); Merchant v. Nassau County, No. 11-cv-3130, 2011 WL 3042766, at * 3 (E.D.N.Y. July 20, 2011). Accordingly, the complaint is dismissed in its entirety with prejudice as against the NCCC. However, since plaintiff is proceeding *pro se*, his complaint will be construed as being brought against the County.

2. Municipal Liability

"[A] municipality [or municipal entity] can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality [or municipal entity]." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. Aug. 1, 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Id.; see also Connick v. Thompson, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, California v. Humphries, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3)

causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, 131 S.Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018)); Humphries, 131 S.Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011), cert. denied, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions– either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality [or municipal entity] by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." Id.;

7

see also Cash, 654 F.3d at 334.

"[D]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious * * * but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." Cash, 654 F.3d at 334 (quotations, alterations and citations omitted). Moreover, "[i]n limited circumstances, a [municipal entity's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Connick, 131 S. Ct. at 1359. "To satisfy [Section 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (internal quotations, alterations and citation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360.[2]

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. See Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Id.

---

[2] Although the Supreme Court recognized "a narrow range of * * * hypothesized single-incident liability" based upon "an obvious need for some form of training," Connick, 131 S.Ct. at 1361, this case does not fall within that narrow and "rare" range of cases, particularly because plaintiff does not allege a complete lack of training of NCCC personnel or that NCCC staff had an "utter lack of an ability to cope with constitutional situations" that existed in the hypothesized single-incident case. Id. at 1363.

8

Since the complaint is devoid of any factual allegations tending to support an inference that a municipal policy or custom existed that caused the medical staff or prison guards at the NCCC to be deliberately indifferent to the medical needs of the prisoners incarcerated there, it fails to state a Section 1983 claim against the County. See, e.g. Murray v. Johnson No. 260, 367 Fed. Appx. 196, 197 (2d Cir. Feb. 22, 2010) (summary order) (affirming dismissal of the plaintiff's deliberate indifference claim against the municipality where the plaintiff failed to show an official policy or directive that caused the medical staff or prison guards unreasonably to act).

a. Leave to Amend

Although, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quotations and citation omitted); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010), leave to amend is not required where a proposed amendment would be futile. Hill, 657 F.3d at 123-24; see also Mennella v. Carey, 253 Fed. Appx. 125, 126 (2d Cir. Nov. 6, 2007) (summary order); Morpurgo v. Incorporated Village of Sag Harbor, 697 F. Supp. 2d 309, 342 (E.D.N.Y. 2010), aff'd, 417 Fed. Appx. 96 (2d Cir. 2011). "[A] complaint amendment would be futile only if the amended complaint would not contain enough allegations of fact to state a claim for relief that is plausible on its face." MetLife Investors USA Ins. Co. v. Zeidman, 734 F. Supp. 2d 304, 311 (E.D.N.Y. 2010), aff'd, 442 Fed. Appx. 589 (2d Cir. Sept. 19, 2011).

Amendment of the complaint to allege a Section 1983 claim against the County would be futile because a constitutional violation cannot plausibly be inferred from the factual allegations

9

set forth in the complaint. Since plaintiff is a pretrial detainee held in state custody, his claim of deliberate indifference to his medical needs is analyzed under the Due Process Clause of the Fourteenth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). "[T]he standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment." Id. at 70-71, 72.

A claim for deliberate indifference to medical needs has both an objective and subjective component. See Collazo v. Pagano, 656 F.3d 131, 135 (2d Cir. 2011); Hill, 657 F.3d at 122. Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." Hill, 657 F.3d at 122 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). In order to determine whether an alleged deprivation of medical care was objectively serious, the court must inquire (1) whether the inmate was "actually deprived of adequate medical care," i.e., whether the prison officials acted reasonably in response to the inmate's medical needs; and (2) "whether the inadequacy in medical care [was] sufficiently serious," i.e., how the challenged conduct was inadequate and what harm, if any, the inadequacy has caused or will likely cause the inmate. Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

"Subjectively, the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness,'" Collazo, 656 F.3d at 135 (quoting Hathaway, 99 F.3d at 553); see also Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind."), i.e., the official must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280; see also Caiozzo, 581 F.3d at 72 (holding

that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and * * * was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." (alterations and quotations omitted)).

Generally, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." Hathaway, 99 F.3d at 553; see also Estelle, 429 U.S. at 106, 97 S.Ct. 285 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim * * * under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Hill, 657 F.3d at 123 ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness– an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (quotations and citation omitted)); Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("[N]egligence is insufficient to support an Eighth Amendment claim."); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) ("'Deliberate indifference' describes a mental state more blameworthy than negligence * * * [and] is a state of mind that is the equivalent of criminal recklessness. * * * A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act * * * that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations and citations omitted)).

Moreover, "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." Hill, 657 F.3d at 123. "[M]ere disagreement over the proper

11

treatment does not create a constitutional claim." Id. (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)). "[T]he essential test is one of medical necessity and not one simply of desirability." Id. (quoting Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

Based upon the factual allegations in the complaint, plaintiff cannot state a plausible claim premised upon a deliberate indifference to medical needs theory. Plaintiff alleges that he was sent to the medical unit immediately after the injury; that x-rays were taken and pain medication was given to him within one (1) day thereafter; that within three (3) days after the injury, his finger was put "back in place and wrapped," (Compl., ¶ IV); and that he was examined, his finger was wrapped and two (2) more x-rays were taken over the next three (3) weeks. Thus, plaintiff received substantial medical treatment for his finger injury while incarcerated at the NCCC. Plaintiff's claim, then, is only: (1) that he was denied what he believes, in his unsupported, layperson opinion, to be appropriate medical care, i.e., an MRI, examination by a specialist and physical therapy two (2) weeks after the injury, when, according to the allegations in the complaint, his finger was still wrapped, which is insufficient to state a constitutional violation, see, e.g. Estelle, 429 U.S. at 107, 97 S.Ct. 285 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice * * *."); Hernandez, 341 F.3d at 146-47 (holding that an issue of medical judgment, i.e., whether or not to provide specific treatment, "cannot form the basis of a deliberate indifference claim."); Fox v. Fischer, 242 Fed. Appx. 759, 760 (2d Cir. July 20, 2007) (summary order) (holding that the plaintiff's allegations that the treatment he received while incarcerated was insufficient and

12

ineffective was, at best, a medical malpractice claim insufficient to state a constitutional violation); Palacio v. Ocasio, No. 02 Civ. 6726, 2006 WL 2372250, at * 11 (S.D.N.Y. Aug. 11, 2006), aff'd, 345 Fed. Appx. 668 (2d Cir. Sept. 14, 2009) (holding that "a disagreement over the proper treatment," i.e., a challenge to the adequacy of the medication given to treat the plaintiff's pain, does not support a constitutional claim); and (2) that his finger was negligently wrapped which, at most, constitutes malpractice that does not rise to the level of a constitutional violation, see, e.g. Baez v. Kahanowicz, 278 Fed. Appx. 27, 29 (2d Cir. May 15, 2008) (summary order) (holding that the plaintiff's allegation that his arm fracture was improperly set, causing deformity and pain, was a claim of medical malpractice); Prince v. Latunji, 746 F. Supp. 2d 491, 496 (S.D.N.Y. 2010) (finding that the plaintiff's allegations that the defendants delayed treatment of his broken finger for approximately two (2) weeks and failed to manage his pain during that period stated, at most, a claim for negligence and were insufficient to allege a constitutional violation). There is no indication in the complaint, *inter alia*, that any medical provider recommended any treatment different from the treatment that plaintiff was afforded at the NCCC or that plaintiff suffered from a life-threatening or fast-degenerating condition, nor is there any allegation that a medical provider or other staff member acted with a culpable state of mind. See, e.g. Hill, 657 F.3d at 123 (affirming dismissal of the plaintiff without leave to amend where there was no indication in the complaint that any medical provider recommended treatment different from the treatment that the plaintiff was afforded, nor any allegation that any medical provider acted with a culpable state of mind); Palacio, 2006 WL 2372250, at * 11 (dismissing the plaintiff's deliberate indifference claim where, *inter alia*, there was no suggestion that the plaintiff suffered from a life-threatening or fast-degenerating condition or that prison officials

deliberately delayed his treatment as a form of punishment). Accordingly, plaintiff's complaint is *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim for relief.

IV. Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted, the complaint is *sua sponte* dismissed in its entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and plaintiff's motion for the appointment of counsel is denied as moot. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.                                      s/ Sandra J. Feuerstein

                                                 _____
                                                 Sandra J. Feuerstein
                                                 United States District Judge

Dated:      October 10, 2012
            Central Islip, New York